NOT FOR PUBLICATION                                                                          CLOSED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
JEFF JAVADI,                        :
                                    :        **Civil Action No. 08-1675 (JAP)**
            Petitioner,             :
                                    :
v.                                  :
                                    :        **OPINION**
UNITED STATES OF AMERICA,           :
                                    :
            Respondent.             :
                                    :
_____:

PISANO, District Judge:

Before the Court is Petitioner, Jeff Javadi's ("Javadi") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Respondent, United States of America ("the Government") has filed an answer in response to Javadi's motion. The Court resolves this motion without oral argument, as permitted by Fed. R. Civ. P. 78. For the reasons set forth below, the Court denies Javadi's motion.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

On February 18, 2005, a federal Grand Jury in Newark, New Jersey returned a ten-count indictment charging Javadi with seven counts of making false statements on his corporate and personal federal income tax returns, in violation of 26 U.S.C. § 7206(1), and three counts of

-1-

deceptively using another's social security number to secure various forms of credit, in violation of 42 U.S.C. § 408(a)(7).

On June 28, 2005, pursuant to a plea agreement with the Government, Javadi pled guilty to count five of the indictment, which charged him with making and subscribing a false personal tax return for the tax year 1994. In exchange for his guilty plea, the Government agreed that it would move to dismiss counts one to four and six to ten of the indictment. For the purposes of sentencing, the government also stipulated that Javadi's total tax loss for 1994 was more than $30,000 (level 14) and less than $400,000, and called for a downward adjustment of up to three levels for Javadi's acceptance of responsibility for the offense charged. Thus, the parties agreed that the sentencing guidelines called for a total offense level ranging between levels 12 and 15. However, the parties did not agree as to the total tax loss amount for the relevant period, 1994-1996, and the Court requested that a presentence investigation report ("PSR") be completed so as to reconcile the two parties' positions.

Javadi objected to the tax loss figure ($365,477) established in the PSR. As a result, the Court held hearings on March 9 and March 21, 2006 to consider both parties' arguments on the issue. The Government argued that the proper tax loss figure was $334,339.[1] It based this figure on three types of evidence in the record: (1) $918,971 in taxable income Javadi obtained during the relevant period as President and sole owner of Environmental Control Technologies, Inc. ("ECTI"); (2) casino records, including currency transaction reports ("CTRs") and cash purchases, revealing that Javadi spent approximately $1 million gambling between 1994 and

---

[1] The Government's figure was predicated on the testimony of Robert Glantz, a special agent with the Criminal Investigation Division of the Internal Revenue Service who was involved in the investigation of Javadi.

1996; and (3) Javadi's admissions in the PSR regarding his use of business income to fund his gambling and narcotic habits.[2]

Javadi disputed the Government's figure and argued instead that the total tax loss amounted to no more than $181,000.  He claimed that $263,950 of the $918,971 he received from his business represented loan repayments and thus should not have been included in the Government's calculation.  He also argued that the casino records relied upon by the Government were incomplete because they only documented money he spent gambling, not money he lost.

Ultimately, the Court credited the Government's computation and concluded that Javadi's tax loss was $334,339, placing him at offense level 18.  After taking into account the three-level downward adjustment stipulated to by the parties in the plea agreement, the Court sentenced Javadi to 22 months in prison[3] and supervised release for three years.

On March 22, 2006, Javadi filed an appeal to the United States Court of Appeals for the Third Circuit challenging the District Court's factual finding with regard to the tax loss figure.  After reviewing the record, the Third Circuit affirmed the District Court's finding.  On June 7, 2007, the Third Circuit denied Javadi's motion for leave to recall the mandate and to file a petition for rehearing.

---

[2] In his PSR, Javadi admitted to "gambling at least once weekly at casinos" and using business proceeds, at least on occasion, to fund his gambling habit. (Gov't Answer at 12.)  He also admitted to utilizing business proceeds to finance his heroin addiction between 1994 and 1996, which the Government calculated to amount to approximately $270,000.

[3] The Sentencing Guidelines called for a range of 21 to 27 months and the Court noted that a "sentence toward the low end of the guideline range" was appropriate given Javadi's difficult upbringing and physical problems.  (Supplemental Appendix ("S.A.") at 133.)

Javadi filed an initial motion to vacate his conviction and sentence on April 2, 2008.[4] After being advised by the Court that he had to file all of his potential claims for relief under § 2255 by a single, all-inclusive motion, Javadi withdrew his initial motion and submitted an amended § 2255 motion on September 30, 2008. Therein, Javadi argues: (1) that the taxable income and tax loss figures arrived at by the Government were erroneous and unsubstantiated; (2) that the Government "misled" him when it agreed to have him plead guilty to count five of the indictment; (3) that the District Court erred by denying him his right to be represented by counsel of his choice, specifically a tax attorney; and (4) that his court-appointed counsel was ineffective, in that she: was inexperienced and ignorant in tax law and failed to conduct a thorough and independent investigation of the facts; failed to make proper objections, call potential witnesses, or move to suppress evidence during sentencing; and failed to advise him not to withdraw his assent to the initial plea agreement he had signed in 2002.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in federal custody may file a motion challenging the lawfulness of his sentence. A sentence will be deemed unlawful if it was: (1) imposed in violation of the Constitution or laws of the United States; (2) imposed by a court lacking jurisdiction; (3) in excess of the maximum authorized by law; or (4) otherwise subject to collateral attack. 28 U.S.C. § 2255. To establish a right to habeas corpus relief, a prisoner must

---

[4] The Court notes that, although Javadi had already served the imprisonment portion of his sentence when he filed this motion, he is still subject to the supervised release period in his sentence and is therefore a "prisoner in custody" within the meaning of § 2255. *See United States v. Essig*, 10 F.3d 968, 970 n.3 (3d. Cir. 1993); *Maleng v. Cook*, 490 U.S. 488, 491 (1989).

demonstrate that the sentence has a "fundamental defect" resulting in "a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Morelli v. United States,* 284 F. Supp. 2d 454, 458-59 (D.N.J. 2003) (internal citations omitted).  The Court must construe the *pro se* motion liberally, as "allegations of the *pro se* complaint . . . [are held] to less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

### III.     LEGAL DISCUSSION

#### A.     Tax Loss Finding

Javadi challenges the taxable income and tax loss figures arrived at by the Government. (Petr.'s Br. At 9.)  In response, the Government contends that Javadi is procedurally barred from raising these issues because they were already raised and considered on direct appeal. (Gov't Answer at 22.)  Upon review, the Court agrees with the Government and holds that Javadi is not permitted to relitigate the tax loss issue in his § 2255 motion.

Generally, § 2255 "may not be employed to relitigate questions which were raised and considered on direct appeal." *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (*quoting Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986); *see Olokose v. United States*, No. 07-1981, 2008 WL 834414, *1-2 (3d Cir. March 27, 2008) (finding that petitioner's challenge to the court's calculation of his criminal history score was procedurally barred because it was already decided on appeal).  Here, the Third Circuit specifically considered and affirmed on appeal the District Court's factual findings with regard to the taxable income and tax loss figures.  Indeed, as the Government points out, Javadi is now largely "recycling many of his earlier arguments" relating to these figures. (Gov't Answer at 22.)  Thus, pursuant to *DeRewal*,

Javadi is procedurally barred from relitigating the taxable income and tax loss issues in his § 2255 motion.

### B. The Government's Alleged Deceit in Reaching the Plea Agreement

Javadi claims that the Government "misled" him when it agreed to have him plead guilty to count five of the indictment. (Petr.'s Br. at 20.) Specifically, he asserts that the Government used other counts of the indictment (to which he did not plead guilty) to support its tax loss finding and, furthermore, that he never identified or fully understood count five. (Petr.'s Br. at 20-21.) Upon review, the Court finds Javadi's argument to be without merit.

Javadi has no basis for asserting that the Government "misled" him by using counts to which he did not plead guilty to support its tax loss finding. First, the Court notes that it addressed this issue at the March 9, 2006 sentencing hearing, when it recognized Javadi's allegations that the Government had previously made representations about the tax loss amount to which he was going to have to stipulate. (S.A. at 16.) However, these allegations were "easily disposed of" by the Court because the parties had since stipulated in the plea agreement to a tax loss figure ranging between $30,000 and $400,000. (S.A. at 16; Additional Appendix ("A.A.") Ex. 1). Indeed, Javadi stated that he did not have any quarrel with this stipulation and acknowledged that no other promises had been made to him in connection with the basic terms of the plea. (A.A., Ex. 4.) Furthermore, the parties agreed that they would attempt to work out an exact tax loss figure but would leave it to the Court to "resolve any disputes" that they were not able to resolve themselves. (A.A., Ex. 4.) As stated above, the parties could not resolve their dispute and the Court ultimately credited the Government's figure. At no point in the proceedings did the Government suggest--far less agree --that Javadi's tax loss would only relate

to the 1994 tax year.  Accordingly, the Court finds no deceit on the part of the Government in reaching the accepted tax loss figure pursuant to the parties' plea agreement.

With regard to Javadi's claim that he never identified or fully understood count five of the indictment, the Court notes that both the indictment (S.A. at 6) and the 2005 plea agreement are explicit in reference to the contents of count five (A.A., Ex. 1).  Moreover, Javadi stated in his guilty plea that he had a "full understanding of all matters set forth in the . . . Indictment" (A.A., Ex. 3) and later answered that he understood both the nature of the specific charges against him and the terms of the plea agreement.  (A.A., Ex. 4).  Therefore, his claim that he never identified or fully understood count five of the indictment is without merit.

### C. The District Court's Failure to Appoint Javadi Counsel of His Choice

Javadi further asserts that the District Court abused its discretion by denying him the right to be represented by counsel of his choice. (Petr.'s Br. at 21-22.)  Specifically, he relies on a letter dated March 7, 2006, in which he requested that the Court "allow him to hire an attorney expert in taxation." (S.A. at 16-17.)  He contends that the Court's denial of his request at the March 9, 2006 sentencing hearing was an abuse of its discretion.  (Petr.'s Br. at 21-22.)  In response, the Government relies on the general rule that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993). Upon review, the Court finds no need to engage in the "cause and prejudice" analysis and rejects Javadi's argument on the merits.

The Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his

defence." However, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). For example, a defendant "may not insist on representation by an attorney he cannot afford." *Id.* Thus, it is "well settled" that a defendant is not denied the right to choice of counsel if "he is unable to afford the 'best' counsel and must, as a consequence, settle for another, perhaps court-appointed attorney." *United States v. Friedman*, 849 F.2d 1488, 1490 (D.C. Cir. 1988).

In the instant case, the Court indicated that it had provided counsel for Javadi after being informed that he was incapable of paying for a private attorney. (S.A. at 17.) Therefore, it acted within its discretion when it denied Javadi's request for the appointment of a private tax attorney whom he could not afford. *See Wheat*, 486 U.S. at 159. Furthermore, the Court appointed, "at significant expense to the government," a forensic account "for the purpose of lending expertise in tax matters to the defense." (S.A. at 17.) Accordingly, Javadi's desire for a defense team competent in tax was accommodated and the essential aim of the Sixth Amendment was met. *See Wheat*, 486 U.S. at 159. For these reasons, the Court finds it did not abuse its discretion or deny Javadi the right to be represented by counsel of his choice when it rejected his request for a private tax attorney.

### D.   Ineffective Assistance of Counsel

Javadi raises a number of arguments relating to the alleged ineffectiveness of his court-appointed counsel. In order to prevail on a claim of ineffective assistance of counsel, a petitioner

must prove two elements pursuant to the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984). First, the petitioner must demonstrate that counsel's performance was deficient such that it "fell below an objective standard of reasonableness." *Id.* at 687-89. Judicial scrutiny of counsel's performance is "highly deferential" and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Second, the petitioner must show that the deficient performance of counsel prejudiced the defense. *Id.* at 688. To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687; *see also Frey v. Fulcomer*, 974 F.3d 348, 358 (3d Cir. 1992). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

      1.  *Counsel's Alleged Inexperience and Ignorance in Tax Law and Failure to Conduct a Thorough and Independent Investigation of the Facts*

Javadi alleges that his court-appointed counsel was ineffective as a result of her inexperience and ignorance in tax law. (Petr.'s Br. at 16.) He further claims that she failed to conduct a thorough and independent investigation of the facts, particularly those facts relating to the Government's tax loss analysis. (Petr.'s Br. at 17-18.) Upon review, the Court finds that Javadi's arguments are without merit.

Counsel has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. A "heavy measure of deference" is owed to counsel's judgments in assessing her decisions. *Id.* As

illustrated above, Javadi's counsel requested (and the Court appointed) a forensic accountant "for the purpose of lending expertise in tax matters to the defense." (S.A. at 17.) The accountant met with Javadi "a dozen times" (S.A. at 78), examined all of his checks (S.A. at 69), and reviewed materials and documents provided by both Javadi and the Government (S.A. at 69-83). He also testified as an expert for the defense and his testimony was used by Javadi's counsel to argue for a lower tax loss figure than that proposed by the Government. (S.A. at 104-09.) As such, Javadi's counsel compensated for any "inexperience" or "ignorance" in tax law by retaining, utilizing, and justifiably relying on the forensic accountant both before and during the sentencing proceedings. Therefore, Javadi cannot demonstrate any deficiency in counsel's performance so as to satisfy the first-prong of *Strickland*.

Moreover, Javadi's allegations are contradicted by the record. In his application for permission to enter a guilty plea, Javadi acknowledged that his lawyer had "done all that anyone could do to counsel and assist [him]" and that he was "satisfied with the advice and help [his] lawyer" had given him. (A.A., Ex. 3.) During his guilty plea hearing on June 28, 2005, Javadi again indicated his satisfaction with his counsel's services and stated that she had answered all of his questions to his satisfaction (A.A., Ex. 4.) He further responded that he did not have any quarrel with the tax loss stipulation in the plea agreement (A.A., Ex. 4.) Accordingly, the Court finds that Javadi cannot now be heard to complain about his counsel's performance, particularly given the assistance she sought and received from the forensic expert.

        2.     *Counsel's Alleged Failure to Make Proper Objections, Call Potential Witnesses, or Move to Suppress Evidence During Sentencing*

Javadi asserts that his counsel was ineffective for failing to make proper objections, call

any witnesses, or move to suppress evidence during sentencing. (Petr.'s Br. at 17-20.) Upon review, the Court finds Javadi's assertions to be without merit.

With respect to her alleged failure to make objections, Javadi contends that his counsel should have objected to the tax loss analysis by the IRS and the testimony from Khashayar Negit, a former ECTI employee. (Petr.'s Br. at 17.) Regarding the IRS' tax loss analysis, Javadi's counsel cross-examined the Government's sole witness (S.A. at 43-56), called an expert witness to dispute the Government's tax loss calculation (S.A. at 68-84), and consistently advocated for a lower figure throughout the entirety of the sentencing proceedings. (S.A. at 104-09). Moreover, Javadi's counsel also called into question the IRS' reliance on Negit's grand jury testimony in its analysis and raised issues about Negit's credibility. (S.A. at 43-46.) Accordingly, the record contradicts Javadi's assertions relating to his counsel's alleged failure to make objections.

With regard to counsel's alleged failure to call witnesses at the sentencing hearing, the Government correctly notes that Javadi's counsel called an expert witness, the forensic accountant, to testify. (Gov't Answer at 31.) Therefore, Javadi's assertion that his counsel did not call *any* witnesses is inaccurate. Furthermore, the record suggests that the potential witnesses Javadi posits his counsel should have called--namely Frank Buttermark, two Manhattan Motor workers, and the operational manager and founder's wife of Reliance Laboratories--would not have aided and, in fact, may have harmed his case. Indeed, the Government offered evidence raising "serious questions about the authenticity" (S.A. at 274) of Manhattan Motor and Reliance Laboratories invoices, and exhibited numerous inconsistencies between those invoices and Javadi's ECTI checks. (S.A. at 272-78). Accordingly, Javadi fails to demonstrate any deficiency in his counsel's professional judgment not to call these witnesses at sentencing. *See Strickland*,

466 U.S. at 689.

Javadi further claims that his counsel was ineffective for failing to file a motion to suppress the CTRs used by the Government as part of its tax loss calculation. (Petr.'s Br. at 18-20.) Specifically, he contends that the CTRs are not "factual evidence" because they do not document the amount of money he actually lost gambling and do not establish, with "certainty," that he used business funds to gamble. (Petr.'s Br. at 18-20.) However, by his own admission, Javadi did use business proceeds, at least "on occasion," to fund his gambling habit. (S.A. at 103.) Moreover, the Government cites numerous instances of correlation between checks Javadi cashed and chip purchases he made, which are reflected in the CTRs. (Gov't Answer at 36-40.) Therefore, Javadi cannot overcome the "highly deferential' treatment of his counsel's performance and demonstrate that her failure to move to suppress the CTRs "fell below an objective standard of reasonableness." *Strickland*, 466 at 689.

Furthermore, as the Government notes, the CTRs were just one of "numerous evidence sources" used to calculate the tax loss figure. (Gov't Answer at 41.) Accordingly, counsel's alleged failure to move to suppress this evidence cannot be said to have prejudiced Javadi because there is not a "reasonable probability that . . . the result of the proceeding would have been different" had she done so. *Strickland*, 466 at 687.

### 3. *Counsel's Alleged Failure to Advise Javadi Not to Withdraw His Initial Plea*

In his final ineffective-assistance-of-counsel argument, Javadi asserts that his counsel aided the prosecution and prejudiced his case by failing to advise him to keep the initial plea agreement he reached with the Government in 2002. (Petr.'s Br. at 20.) In this agreement,

Javadi agreed to plead guilty to a tax evasion charge which carried with it more lenient terms than the 2005 plea agreement  (A.A., Ex. 2.)  However, allegedly out of fear of being sentenced to the maximum prison term allowed under the statute, Javadi voluntarily withdrew his plea. (Petr.'s Br. at 7-8.)

As the Supreme Court held, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691.  Indeed, counsel's actions are "usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Id.*  Thus, while Javadi may regret having withdrawn his assent to the more favorable 2002 plea agreement, he did so volitionally.  He cannot now be heard to fault counsel for accepting his decision.  Furthermore, Javadi did not raise this complaint at the time of his 2005 guilty plea and instead stated that he was satisfied with his counsel's services in reaching the later plea deal.  (A.A., Ex. 4.)  Accordingly, Javadi's claim that his counsel was ineffective for failing to advise him to keep the 2002 plea agreement is rejected.

### IV.    CONCLUSION

For the foregoing reasons, Javadi's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is denied.  Additionally, because Javadi has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.

Dated: August 4, 2009                                         /s/ JOEL A. PISANO
                                                              United States District Court Judge